The first matter before us today is 23-1282, Advanced Colorado v. Griswold. And it appears that counsel are ready, so when you're ready to begin, feel free to approach the podium. Good morning, Your Honors, and may it please the Court. My name is Jennifer Weddle, and I represent the Plaintiff Appellants in this matter. I would respectfully reserve three minutes for rebuttal. And you will be responsible for watching your own time. Understood, Your Honor. This Court should reverse the District Court's denial of the preliminary injunction sought by my clients because government speech is not ballot initiatives. Ballot initiatives are not government speech. Well, we're not talking about the ballot initiatives, we're talking about the title. Yes, we are, Your Honor. And in that respect, the title is still my client's speech, subject to reasonable time, place, and manner restrictions. But here, the State of Colorado is not attempting to formulate how my clients should speak, but rather telling them what to say. And telling them what to say falsely, I might add. With respect to ballot initiatives, government acts as a mere facilitator. It is not speaking its own message at all. Rather, ballots are a forum, much like trademarks, or university activity fees, or open flag venues. Or license plates? No, license plates are formulaic and have been ruled by the U.S. Supreme Court to be government speech in Walker, like other forms that state matters of fact, birth certificates or passports, areas where the government is very much dictating the content of those messages. Ballot initiatives are not the government's speech. Indeed, they are fundamentally a check on government. This is a power that... So are you saying that a proponent of a proposition should be able to write their own title? No, Your Honor. We're saying that any limitations on the title should be subject to a neutral body, not a political body, to help formulate the method of that speech to Colorado citizens. That's a role that a neutral body has had since 1938 in Colorado, when their job is to articulate the content, not to put words in the mouths of citizens. Wasn't the neutral body the Colorado Supreme Court, and you chose not to appeal? My clients absolutely did appeal. When House Bill 21-1321 was enacted, the very next year on the initiative ballot effort, my clients put forward a very similar proposal, Initiative 46, went through the petition process before the title board, trying to change the title. The title board agreed with my clients that the content was not accurately described by the mandatory language required by 1321, and my clients appealed that to the Colorado Supreme Court and waited seven months and got a per curiam affirmance of the title board's effort. I think perhaps with the Colorado Supreme Court fundamentally misconstruing that this was not the neutral title board that set this title. Rather, the title board's hands were tied by the political body of the legislature, requiring my clients to... But let's get back to the Supreme Court. Why is that not a neutral body? You had an opportunity to seek their view and correct this, and they said no. Isn't that the end of the game? That's the neutral body you wanted, isn't it? With no result, Your Honor. Well, it was not a good result for your clients, right? No, definitely not a good result, and not a result on the merits of the First Amendment issue. So, in other words, you should be able to write it... Your clients should be able to write it any way they want to, even though it passes mustard with the Supreme Court of Colorado. No, our clients should not be able to write the title any way they want to, nor is that what they are suggesting. They would refer to the custom and practice that's been present in Colorado for a century,  that accurately captures the intent of the petitioner, the proponent of the ballot initiative, and that ensures the language complies with the single subject rule, that the language doesn't contain any impertinent or scandalous matter, that conforms the speech to the presentation that's required to be made on the ballot in that forum. Hasn't, since 1941, the titles been written by the title board? Yes, and largely without incident. My client's complaint is not with the title board, which, quite frankly, agreed with my clients that the language mandated by 1321 does not accurately describe their ballot initiative, and rather inserts the state majority's own contrary views in order to prime Colorado voters to vote against the message that my clients seek to advance, a check on Colorado government. So in this way, I would say, ballots are very much a forum, and not the government's speech. Much like the trademarks that the U.S. Supreme Court ruled on in Mattel v. Tam. There, so too, as with ballots, the government regulates the form of the speech. The government has a registration, where there's a process to go through to get through with that speech, to present that speech to the public. But simply because a proponent advances speech with which the government disagrees, does not somehow magically convert that into government speech. This has never been the government's message. Indeed, citizen initiatives are powers expressly reserved by Colorado citizens to themselves in the Colorado Constitution. And it is outrageous for the state to say that they can co-opt and hijack a citizen's speech that is supposed to be a check on government. What if the state had passed a law that said, with respect to ballot initiatives, that they would be presented in the following form. First, some body created by the state would summarize the ballot initiative and state what the legislature's reading of the initiative was. And second, the ballot initiative language would be there for people to read. And as part of the first paragraph, it would say, this is the position of the Colorado Assembly, or whatever you want to call it. Would that be appropriate? No, it would not be appropriate for the Assembly to require that on the ballot. Of course, the Assembly is always free to participate, as any other Colorado citizens, in the campaign, in the public debate about such initiatives. But under 303 Creative, my clients and all others have a First Amendment right to present their message undiluted by views they do not share. Well, they're getting to. They have a paragraph. They have their own place on the form that's specifically theirs. And the government, who you have to admit has an interest in these two, has a space for theirs. And it's clearly delineated on the form whose space is what. So, I would still argue that that is not what a citizen's initiative is. But that's also not the case that we have here, Judge Carson. Instead, we have a very acknowledged political aim behind House Bill 21-1321. We had this in our brief, but I'd like to share it again with the Court. Representative Chris Kennedy talked very specifically about what the purposes of 1321 were. He said it's a stop-the-bleeding bill. What we've seen increasingly is that Republicans, who have not been successful at winning majorities here at the Capitol in recent years, are increasingly turning their attention to the ballot and using that as a way to get government closer to the size that can be drowned in a bathtub. We'd prefer that government not drown in the bathtub. We'd prefer that ballot measures don't continue to chip away at our ability to fund public schools and other priorities that the voters of the state care about. So, I have no doubt that that could be true. But how does that make the government's speech your speech? Because that's exactly what 1321 requires. It requires every tax change measure to state at the very beginning that the ballot title shall begin, shall there be a reduction to the description of the tax by whatever percentage, thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to the three largest area of program expenditures, which are always health care, education, and finance. It's designed directly to prime voters to vote against a tax change. Whatever the motive, the issue is who's speaking. And I think what Judge Carson is trying to point out is if you look at the short-lived factors, as I read your brief, you've conceded that the history supports that it's government speech. And then when we look at the perception of who's speaking, if you look at the language preceding the title, it says the ballot title and submission clause as designated and fixed by the initiative title setting review board is as follows. I mean, that's pretty clear that this is not the people making the initiative who are speaking. It's a title that's been set by the government. It's a title that's been set by the political body of the government opposed to the speech. I don't care. It's the title that's not you speaking. It's the government speaking. Right, and not a neutral body, which the title board has always implied. Well, our elected officials are not neutral bodies, right? Right, and the title board is not elected. But you're saying that the motivation for the title board is because of legislation that a group of legislators passed that you don't like. And isn't your remedy to vote them out of office? The remedy is that 1321 is unconstitutional and should be struck down because it attempts to put the government's words into the mouths of citizens and requires that. It forbids the title board from making any neutral assessment of what the content of the proposed initiative is. And that's the same way that ballot initiatives have always been understood in Colorado. Take the most famous example, Amendment 2. No one understood that the Amendment 2 ban on Colorado municipalities engaging in policy choices to benefit LGBTQ plus individuals was the government's speech. Governor Romer was indeed the primary opponent of Amendment 2. Again, turning to the shirtlift factors, because that is the analytical framework we have to apply, the third element is whether the government controls the formulation of the title or the proponents of the initiative do. While the proponents of the initiative have carte blanche to formulate the language of the initiative, the title itself is highly regulated. Would you agree with that? I do agree with that, Your Honor. So that would resolve the third shirtlift factor as government speech. So the shirtlift factors are by no means mechanical and formulaic, as Justice Alito pointed out in his concurring opinion at great length, saying a forum by definition is a space for private parties to express their own views. The government can, of course, speak as a participant in the forum, but the creation of a space for private discourse does not involve expressing a governmental message, deputizing private parties to express it, or adopting a private party's contribution as a vehicle of government speech. So when the examination of the government's policy and practice indicates the government has intentionally opened a nontraditional forum for public discourse, a court may immediately infer that the private party expression in that forum is not government speech. This is my client's speech. I'm going to alert you to your time just because you said you're trying to watch it. Thank you, Your Honor. Good morning, and may it please the Court. Michael Kudlarczyk on behalf of Colorado Secretary of State Janet Griswold. Colorado, like 17 other states, has government officials set a ballot title for citizen initiatives. And the ballot title, as its name suggests, is how the initiative will appear to voters when it appears on the ballot. When you say it's set by government officials, you're talking about the title board? I am, Your Honor. Okay. But effectively, the title board doesn't have any discretion here. Do you agree with that? Well, when the language in 1321 is triggered, the title board has to include that language. I agree with that. They still set the rest of the title, and they still include other language in the title. The language required by 1321, when it is triggered, is required to be inserted. But as an earlier question from Judge McHugh suggested, whether it's the General Assembly's language that's required to be included or language that's entirely generated by the title board is irrelevant to the inquiry as to whether it's government speech. Because the title board also consists of government officials. It consists of the Attorney General or his designee, Secretary of State or her designee, and a designee of the Director of the Office of Legislative Legal Services. So whether it's the General Assembly itself or it's this board consisting of government officials and their designees is irrelevant in terms of a government speech inquiry. Are there any limitations on the title? For example, could the title say, don't vote for this initiative or the state will go bankrupt? The limitations, Your Honor, come primarily from Colorado law. And there is a robust process that's both procedurally and substantively robust to ensure that what's presented to voters is a fair representation of what they're being asked to vote on. The Colorado Supreme Court, every proponent, every objector, every citizen who appears before the title board at a hearing or a rehearing has a right to appeal the determination of the title board to the Colorado Supreme Court within seven days. And the Colorado Supreme Court then has the obligation to determine that in an expedited manner. They're principally concerned with whether there's a single subject and whether the title itself is clear and not unfair or misleading. So a title along the lines of what Your Honor suggested would not pass muster, I'm comfortable saying, before the Colorado Supreme Court because it would be very much putting the thumb on the scale. Do you agree with the projections that there will be a tax refund under TABOR for Colorado citizens during this time period? Well, we don't dispute that the fiscal summary that's in the record projects a tax refund, projects that we will be in a tax refund scenario. The reason I'm quibbling with the premise a little bit, Your Honor, is because a lot of things could happen between now and when a refund would ultimately be issued that would control whether there in fact is a refund. For example, the legislature could ask for and voters could grant the authority to retain that excess revenue so that there would be no refund. Of course, economic conditions could change as well. But we don't quibble with the fiscal summary that's attached. Okay, so doesn't that suggest that the title in this case is false or is at least misleading? The evidence available to you right now is that there's going to be a refund, that this is not going to cause money to be taken away from the three primary beneficiaries of taxes. So I don't think so, Your Honor. And first of all, I'd like to differentiate. There are two measures that advance Colorado's appeals here, one of which concerns local property tax caps. And that really involves a different factual scenario than what I understood your question to be asking. So the second one that's proposing a 0.01% reduction in the sales tax in a scenario where we're currently projecting a fiscal surplus, that's not false either for a couple of reasons, Your Honor. One, the language used in the title says funding for state expenditures will be reduced. And if you think of revenue as it was analogized at the hearing by Henry Sauvignon, the government's expert, as you think of the total revenue as a bucket with a spigot. And when the revenue goes above the spigot, there's a few things that can happen. One is voters can authorize that revenue to be retained. The other is the spigot can be opened up and there can be a taper refund. The funding for state revenue is still going to be reduced because that whole bucket is the funding for state revenue. So it's not false to say that funding will be reduced by a tax cut. And as Mr. Sauvignon also testified, a tax expenditure, such as a taper refund, is another form of a government expenditure or government funding. Well, that's not mentioned specifically. And the title, at least with respect to this sales tax issue, suggests that services are going to be cut as a result of this. But there's no evidence of that. So the remedy here for Advanced Colorado, if they were concerned... First, do you agree with that? That those services will not necessarily be cut? Right. There's no guarantee that those services will be cut. But the title suggests that those services will be cut. The title doesn't expressly say that. It's just taking the money away from them. Right. I don't disagree that the title discusses those services and frames them immediately following that there will be a cut in revenue. Well, it uses absolute terms, not maybe terms. It does say, well, yes and no, Your Honor. It does say it will reduce funding. But it says that include but are not limited to. So it's saying it includes the funding for these types of state expenditures. Right. It says it includes not limited to means it includes at least these and there might be more. And it's stated in absolute terms. So let me ask you this. If we thought it was misleading, but the Colorado Supreme Court doesn't think so, what's our role here? I don't believe there is one, respectfully, Your Honor. And I also don't... It's worth pointing out that the Supreme Court here wasn't asked whether this was misleading. That was my question earlier. And I thought that was true, that these particular titles have not been taken to the Supreme Court. That's absolutely correct, Your Honor. And my friend on the other side referred to the title for number 46, which was proposed in the last cycle, which was 2021-2022. And the title there actually was different. First of all, as this Court is well aware, when you have a one-sentence summary affirmance, you really can't draw conclusions from what the Court intended by that. I think it's a mistake to say that by doing... By that summary affirmance, you could infer that the Colorado Supreme Court is going to approve every title containing this language in perpetuity. There's also an important... When there's a method in the Colorado procedure for a review by the Colorado Supreme Court, instead of doing that, they come to federal court and ask us to make that determination. My question is, do we have an abstention issue here? We do argue that there is a Pullman abstention issue. We think Pullman abstention is discretionary, and we are asking the Court here to affirm rather than abstain. We do think that if it came to the point of where this Court needed to make a determination of truth or falsity, that Pullman abstention would be absolutely appropriate, for the exact reason that the Colorado Supreme Court has not yet written on this bill and this language as it's required. And I do want to address what number 46 specifically said, because the title was not identical to the titles here, not just because the measure was a little bit different. Going back to the question of whether the title here is not accurate or misleading, does that matter if it's government speech as opposed to the proponents of the initiative's speech? Can the government in the title say whatever they want without impacting the rights of the people to bring initiatives? Truth or falsity is not an element of government speech. It's not an element of compelled speech. That's not my question. My question is, assume it's government speech. So, assuming it's government speech, the Supreme Court has said nothing that suggests that there is an outer limit beyond which the government cannot go when it's speaking. So, can the government say anything? The Supreme Court has not yet provided any guidance as to whether somewhere way out there, there's an outer limit. Well, you said earlier on my hypothetical that that would go too far, that if the government, if the title was don't vote for this, it will bankrupt the state of Colorado. You said, well, no, even government speech, that's too far. What's the line?  The state law process, the state law substance that currently undergirds the title setting process, is sufficient, more than sufficient, to police this line of when a title is true or misleading. It's been used for decades in Colorado to do precisely that. And if I may return to the title for number 46, I do want to point out that it was different in at least one important way, which is the title for number 46, after the language required by 21-13-21, it said, or will, this is at page 44 of the appendix, or will reduce the amount of the taxpayer refund if a refund is required under TABOR. That qualifying language was not added at the end of 21-22, which are the two initiatives that Advanced Colorado challenged in this proceeding. So we don't know if the Colorado Supreme Court's summary affirmance relied upon that language as a distinguishing factor. I also want to address briefly the potential consequences of the plaintiff's position here, which is, again, having an impact not just on the petitioning process, but on what Colorado is allowed to print on its own ballots. The Colorado Constitution itself, and as the government speech cases recognize, the ballot box are the means by which we check government speech. According to the petitioners, they have a right to object to government speech when it appears on the ballot. And they go so far, on page four of their opening brief, to suggest that even if there was no truth or falsity problem, speech being forced to use the government's forms would still violate their rights under the First Amendment. But if proponents are responsible for drafting their own ballot titles, there is no check on falsity whatsoever. Sure there is. When everybody goes and votes on it, they can determine whether it was true or false through their own research. Well, again, Your Honor, if they're allowed to, that is the extra judicial check, I suppose, that would exist. But the process that's set up in Colorado right now is a check provided from the government speech, when the title board sets the speech, straight up to the Colorado Supreme Court with the right of immediate review. And that provides the check that the voters will have before them a true and not false or misleading ballot title. And under petitioners' suggestion that any language with which they disagree, they do not have to put on the ballot, do not have to put on the initiative petition, that check goes away. So is it your position that the last stop for this case is going to be the Colorado Supreme Court, no matter what? That we have no role, the federal court has no role, if the Colorado Supreme Court decides this may be a little misleading, but it's close enough, that that's it? That is our position, Your Honor. With respect to the First Amendment, since the ballot title, as it's used on the government's own ballot, is government speech and is sort of quintessential government speech, we do think that there's no role for this court to then step in and police truth or falsity in government speech, especially when the state system does provide a robust check for precisely what petitioners are complaining about here. And so it would be your position that the way the system is designed, it has to be in place to prevent the petitioner from saying things that are false or misleading, but the same standard wouldn't necessarily apply to the government? I don't think that is our position, Your Honor. I think the Colorado Supreme Court imposes the check on the ballot title. So the ballot title, as opposed to petitioners, of course, when they are out there trying to collect signatures, if they get enough signatures, they qualify for the ballot. If they're out there trying to convince people to vote for their initiative, they can say whatever they want, subject to general fraud laws. But when we're talking about the ballot title specifically, the Colorado Supreme Court, if I may finish my response, thank you, Your Honor, is providing a check to the truth and accuracy of what's in the ballot title itself. And it's not just the proponents who are able to challenge a decision made by the title board. Objectors, those who don't approve of what the sponsors are looking for, they also have a right to go to the Supreme Court. So in either event, the Supreme Court has the right to perform that check. Thank you. Thank you, Your Honor. Thank you. House Bill 21-1321 was a pure legislative power grab designed to entrench the purse with the legislature and take that check on government away from the people. It is fundamentally not right for the state of Colorado to insert its own words for Colorado citizens speaking in the forum of the ballot. The state of Colorado cannot require this mandatory language in ballot initiatives anymore than they could change the name of the Republican nominee from Donald Trump to Nikki Haley, simply because that was their preferred message. The ballot is simply the forum. The state of Colorado can dictate the forum, but not the content of those messages. The state simply cannot continue to insert whatever cautionary tales they choose into ballot language. One could imagine a ballot initiative, for example, seeking to protect the right of Coloradans to receive birth control pills by the mail. The legislature could not pass a law requiring that initiative to say which pills will cause fertility issues for anyone who consumes them. They can't add to the message any cautionary tales that they want to try to influence the outcome of the vote. That is the First Amendment violation, which is always protectable under the U.S. Supreme Court's clear precedence. Thank you. We will take this matter under advisement.